**Electronically Filed
Intermediate Court of Appeals
CAAP-11-0000721
31-MAY-2013
10:28 AM**

CAAP-11-0000721

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


PHILLIP G. KUCHLER, INC., Claimant-Appellee/Cross-Appellant,
v.
ABE LEE REALTY, LLC, and ABRAHAM W.H. LEE, Respondents-
Appellants/Cross-Appellees.


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(S.P. NO. 11-1-0325)


MEMORANDUM OPINION
(By: Nakamura, C.J., and Foley and Reifurth, JJ.)


This appeal arises out of a motion by Phillip G.
Kuchler, Inc. (Kuchler) to confirm an arbitration award against
Abe Lee Realty, LLC (Lee Realty) and Abraham W.H. Lee (Lee). The
motion was filed in the Circuit Court of the First Circuit
(Circuit Court).[1] Respondents-Appellants/Cross-Appellees Lee
Realty and Lee (collectively, "Respondents") appeal from the
"Order Granting in Part and Denying in Part Claimant [Kuchler's]
Motion to Confirm Final Award of Arbitrator as Judgment Against
Abe Lee Realty, LLC and Abraham W.H. Lee" (Confirmation Order)
that was filed by the Circuit Court on August 29, 2011.
Claimant-Appellee/Cross-Appellant Kuchler cross-appeals from the
"Final Judgment" of the Circuit Court filed on September 9, 2011,

_____

[1] The Honorable Rhonda A. Nishimura presided.

which is stated to be "[b]ased upon" the Confirmation Order. Kuchler also cross-appeals from three post-judgment orders.[2]

Abe Realty as the "Buyer" and Lee as "Guarantor," entered into an agreement with Kuchler to purchase real-estate management accounts held by Kuchler. The purchase price was based on the gross monthly receipts generated by the management accounts. Kuchler and Respondents submitted disputes arising out of the purchase agreement to arbitration. The arbitrator ordered that Lee "sequester" certain gross monthly receipts by depositing them in a separate bank account while the parties' dispute was being arbitrated. The arbitrator eventually ruled that Abe Realty was liable to Kuchler for the purchase price under their purchase agreement and that Lee, while not the Buyer under the purchase agreement, was liable to Kuchler for a portion of the purchase price based on his personal guaranty.

The parties' appeals to this court revolve around what the arbitrator actually decided with respect to the disposition of the funds that were placed in the separate account, which the arbitrator referred to as being "held in escrow"; whether the Circuit Court properly interpreted the arbitrator's decision regarding the disposition of these funds; and whether the Circuit Court's rulings that were related to Kuchler's attempts to collect the arbitration award were proper.

In their appeal, Respondents contend that the Circuit Court erred by including in the Confirmation Order the following language which they assert was contrary to the arbitrator's decision: "The funds deposited into the escrowed bank account are

_____

[2] Kuchler appeals from the following post-judgment orders of the Circuit Court: (1) the January 6, 2012, "Order Dismissing [Kuchler's] Motion to Enforce [Confirmation Order]"; (2) the January 6, 2012, "Order Granting in Part and Denying in Part [Lee's] Motion 1) For Protective Order, 2) to Vacate Ex Parte Motion For Examination of [Lee], 3) to Vacate Ex Parte Motions for Garnishee Summons After Judgment[,] 4) For Order Directing Claimant to Restore [Lee's] Garnished Accounts, 5) For Sanctions, and 6) For Entry of a Satisfaction of Judgment for [Lee]" (Order Regarding Lee's Omnibus Motion); and (3) the February 9, 2012, "Order Denying [Kuchler's] Motion to Reconsider 12/15/11 Decision (1) Dismissing [Kuchler's] December 12, 2011 Motion to Enforce [Confirmation] Order and (2) Granting in Part and Denying in Part [Lee's] October 26, 2011 Omnibus Motion."

to be used to partially satisfy the judgment owed by [Lee Realty] only."

In its cross-appeal, Kuchler contends: (1) the Circuit Court erred in entering a Final Judgment which did not conform to the arbitrator's award and its own Confirmation Order; (2) the Circuit Court erred in ruling that it lacked jurisdiction to enforce its Confirmation Order due to the filing of this appeal; (3) the Circuit Court erred in entering a satisfaction of judgment for Lee and precluding additional collection efforts against him; and (4) the Circuit Court erred in denying Kuchler's motion for reconsideration of prior rulings adverse to Kuchler.

As explained below, we vacate portions of the Circuit Court's orders challenged on appeal, and we remand the case for further proceedings.

BACKGROUND

I.

In April 2009, Kuchler and Lee Realty entered into an "Asset Sale and Purchase Agreement" (Purchase Agreement) under which Lee Realty agreed to purchase from Kuchler a portfolio of real estate management accounts held by Kuchler.  The Purchase Agreement provided in relevant part that Lee Realty would pay Kuchler: (1) one-half of the gross income received from the management accounts less $4,000 for the cost of a bookkeeper and less "direct expenses" from May 1, 2009, through December 31, 2009; plus (2) twenty-months times the "Average Monthly Gross Receipts," which would be derived by adding the total gross receipts less direct expense less $4,000 for May 1, 2009, through December 31, 2009, divided by eight months.  Lee, who was identified in the Purchase Agreement as Lee Realty's "principal," personally guaranteed payment of the purchase price "for the first year."  Lee signed the Purchase Agreement on behalf of Lee Realty and as "Guarantor."

II.

Disputes soon arose regarding the Purchase Agreement. Kuchler and Respondents submitted their disputes to arbitration before Arbitrator Keith W. Hunter (Arbitrator), pursuant to the terms of the Purchase Agreement.  Kuchler, among other things, asserted claims against Respondents for money owed to Kuchler under the Purchase Agreement as well as for unjust enrichment and interference with contract and prospective economic advantage. Respondents, in turn, claimed that Kuchler, through misrepresentations, fraudulently induced Respondents to enter into the Purchase Agreement and that Kuchler had also breached its obligations under the Purchase Agreement.

A.

Prior to the arbitration hearing, Kuchler filed a motion with the Arbitrator seeking to require Respondents to make immediate payment of all monies due under the Purchase Agreement. Respondents opposed the motion, arguing that they were alleging breach of the Purchase Agreement and seeking damages against Kuchler.  Respondents, however, offered to deposit the disputed fees and commissions collected on the management accounts into a neutral account pending the outcome of the arbitration.

Although the Arbitrator denied Kuchler's request for immediate payment of monies due under the Purchase Agreement, it noted that Kuchler had "raised valid points in that: (1) [Respondents] currently [are] receiving the whole benefit of all fees earned off of the subject [management accounts]; (2) the [Purchase Agreement] language anticipates a portion of these funds to go to Kuchler, and (3) Kuchler is prejudiced economically by the imbalance of resources."  The Arbitrator ruled that:

> the appropriate remedy is to sequester all "Gross Monthly
> Receipts" as defined in the [Purchase Agreement] in a
> neutral account beyond the use of either party pending the
> final outcome of their dispute.  "Gross Monthly Receipts"
> means total gross receipts from the subject assets less
> direct expenses and bookkeeping expenses according to the
> formula established in the [Purchase Agreement].  The
> purpose of this fashion of order is to prevent either party

from gaining from the disputed contract unfairly, while relieving [Respondents] from having to carry the direct expenses from other resources.

The Arbitrator therefore granted Kuchler's motion in part and entered the following interim order on July 16, 2010:

1.    [Respondents are] ordered to open forthwith a separate account in an FDIC-insured, interest-bearing account at a bank located in Honolulu, Hawaii.

2.    [Respondents are] to deposit into said account all Gross Monthly Receipts (i.e., gross receipts less direct and bookkeeping expenses as set forth in the contract) from the subject Kuchler accounts that [Respondents have] received to date, and on a monthly basis into the future until this order expires according to the terms below.

3.    [Respondents are] to provide initial account opening statements and thereafter monthly account statements reflecting all account activity and balances to Kuchler's counsel and the Arbitrator.

4.    [Respondents are] to provide itemized profit and loss statements for all [they have] received to date on the Kuchler accounts, and on a monthly basis moving forward, [Respondents are] to provide concurrently with the monthly bank account statements to Kuchler's counsel and this Arbitrator, monthly profit and loss statements for the subject Kuchler accounts, and

5.    This order will remain in full force and effect until entry of the final Award in this Arbitration or until further order of the Arbitrator.

B.

On April 25, 2011, after seven days of hearings, the Arbitrator issued a his "Arbitrator's Decision and Partial Final Award" (Partial Final Award). The Arbitrator found that Kuchler did not fraudulently or improperly induce Respondents to enter into the Purchase Agreement and that Kuchler and Respondents had validly entered into the Purchase Agreement. The Arbitrator therefore determined that Kuchler was entitled to the award of damages (i.e., the agreed upon purchase price) pursuant to the terms of the Purchase Agreement. The Arbitrator found that only Lee Realty, and not Lee as an individual, was the "Buyer" under the Purchase Agreement and therefore only Lee Realty was liable for the obligations of the "Buyer" under the Purchase Agreement.

However, because Lee had personally guaranteed the purchase price for the first year, Lee was liable as a guarantor for the first years's payment under the Purchase Agreement.  The Arbitrator determined that Lee Realty owed Kuchler $172,845.55 under the Purchase Agreement and that Lee was personally liable for $66,941.87 pursuant to his guaranty.  The Arbitrator also determined that Kuchler was the prevailing party in the arbitration and entitled to attorneys' fees and costs.

In its "Conclusion and Award," the Final Partial Award states as follows:

> 1.    Judgment is entered in favor of Claimant, Phillip Kuchler, Inc., against Respondents Abe Lee Realty, LLC and Abraham W. H. Lee in the amount of $172,845.55.
>
> 2.    The sums currently held in escrow may be used to partially satisfy this award.
>
> 3.    Claimant Kuchler is awarded reasonable attorneys' fees and expenses, which will be determined according to the briefing schedule set forth above.
>
> 4.    Any and all other claims not specifically addressed herein are denied and dismissed.
>
> 5.    This Arbitrator retains Jurisdiction for the sole and exclusive purpose of issuing an award of reasonable attorneys' fees and expenses.  In all other respects, this Arbitrator is *functus officio*.

(Emphasis added.)  The Arbitrator's reference in the Final Partial Award to sums "held in escrow" was apparently to the Gross Monthly Receipts the Arbitrator had ordered Respondents to deposit into the separate bank account that the Arbitrator had ordered Respondents to open.  Because the parties, the Arbitrator, and the Circuit Court refer to the separate bank account as the "escrow" account, we will also use the term "escrow" in referring to the separate bank account.

C.

Unbeknownst to Kuchler and the Arbitrator, Lee withdrew $118,034.17 that had been deposited into the escrow account on April 29, 2011, four days after the Partial Final Award was issued, by writing a check to himself.  According to Lee, he deposited that check into Lee Realty's bank account, and then the

6

funds were used to "cut checks to Kuchler for his 66,000-plus, for his judgment"; pay Respondents' attorney $15,000; pay an associate of Lee $16,000; and pay Lee $18,000 for money Lee Realty owned to him.

On May 7, 2011, Kuchler's attorney wrote to Respondents' attorney requesting that the "substantial funds in the frozen bank account" be used to immediately pay a portion of the award, "as the Arbitrator has stated in paragraph 2 of his Conclusion." On May 17, 2011, Respondents' counsel sent Kuchler's counsel an "Official Bank Check" from First Hawaiian Bank in the amount of $66,941.87, along with a letter stating that the check was "in full satisfaction of Mr. Lee's personal guaranty as ordered by Arbitrator Hunter."

On June 6, 2011, the Arbitrator issued the "Final Award of Arbitrator" (Final Award) The Final Award expressly incorporated the Arbitrator's previous Partial Final Award and awarded Kuchler, as the prevailing party, an additional $81,948.76 in attorneys' fees and $8,027.53 in costs.

D.

On June 21, 2011, Kuchler filed with the Arbitrator, a "Motion to Clarify the Final Award of Arbitrator," pursuant to Hawaii Revised Statutes (HRS) § 658A-20(a)(3) (Supp. 2012).[3] Kuchler requested that the Arbitrator modify or correct the Final Award to clarify that: (1) Lee and Lee Realty were jointly and severally liable for the award of $89,976.29 in attorneys' fees and costs; (2) besides the award of attorneys' fees and costs, judgment had been entered against Lee Realty for $172,845.55 and against Lee for $66,941.87 out of the $172,845.55; and (3) "[t]he

---

[3] HRS § 658A-20, entitled "Change of award by arbitrator," provides in relevant part:

> (a) On motion to an arbitrator by a party to an arbitration proceeding, the arbitrator may modify or correct an award:
>
> . . . .
>
> (3) To clarify the award.

sums currently held in escrow . . . may be used" to partially satisfy Lee Realty's liability on the Final Award and "those funds shall continue to remain in escrow until they have been exhausted in partial satisfaction of [Lee Realty's] liability on the [Final] Award consistent with the Arbitrator's Interim Order entered July 16, 2010, which required Respondents . . . to open a separate bank account to deposit and hold . . . gross monthly receipts pending their disposition in the Final Award."

On June 30, 2011, the Arbitrator issued the "Arbitrator's Post Award Order Re: [Kuchler's] Motion to Clarify the Final Award of Arbitrator" (Clarification Order). With respect to Kuchler's first two requests for clarification, the Arbitrator ruled that Lee was not individually liable for the attorneys' fees and costs awarded and that Lee's liability as guarantor was limited to $66,941.87 of the total amount awarded. With respect to the third request for clarification, the Arbitrator framed the request raised by Kuchler as "Whether the funds in escrow pursuant to the Arbitrator's July 16, 2010 order for interim relief are to remain in escrow until they have been exhausted in partial satisfaction of the final award."

The Arbitrator stated that

> the funds in escrow were placed there as the property of Lee Realty and remained the property of Lee Realty until such time as the Partial [Final] Award was entered, as that found that Kuchler had an ownership right in the escrow funds as well. Moreover, Mr. Lee, since he was found not a party to the sales contract, never had a legal ownership interest in any escrow funds.

The Arbitrator found and concluded as follows:

> The Partial Final Award and Final Award both provided that the funds in escrow were available to satisfy any award made in this Arbitration. The language and purpose of the Order establishing the escrow account clearly did not permit the funds to be released from escrow without account, as they were placed in escrow specifically to preserve the funds pending resolution of the dispute over the rights to these fees. Kuchler claimed an ownership interest in those fees as did Lee Realty, who was collecting the fees.

> Lee Realty was held to be the sole principal party to the contract with Kuchler, as [Respondents] advocated strenuously in the arbitration. As such, all of the

8

management fees received and deposited into escrow comprised only Lee Realty's property at the time they were deposited up until the Partial Final Award was entered. On the other hand, as [Respondents] argued and this Arbitrator agreed, Mr. Lee was not a principal party to the [Purchase Agreement] and not the owner of the management contracts. As such, none of the money deposited into the escrow account was his money and he has had no legal right to access it in any personal capacity at any time.

This arbitration established that Kuchler has, as [it] claimed, a legally valid ownership interest in the escrowed funds. Namely, Kuchler was entitled to be paid certain amounts earned by Lee Realty on the management contracts, which earnings were placed in the escrow account pending the resolution of this dispute. Thus, after entry of the Partial Final Award, both Kuchler and Lee Realty had legal interests in the escrowed fees, and Mr. Lee, individually, had no legal interest in the escrowed fee. In accordance with these facts, the Partial Final Award allowed for the escrowed [sic] to be applied to the award.

III.

In the meantime, on June 20, 2011, Kuchler submitted a "Motion to Confirm Final Award of Arbitrator as Judgment Against Abe Lee Realty, LLC and Abraham W.H. Lee" (Motion to Confirm Arbitrator's Final Award) with the Circuit Court, which was filed on June 22, 2011. Kuchler requested that the Circuit Court confirm the Arbitrator's Final Award and also confirm the Arbitrator's July 16, 2010, interim order (Interim Order), so that "the funds ordered to be deposited into the escrowed bank account shall continue to be held frozen pending application of those funds to satisfy the arbitration award and judgment in this case[.]"

A.

Up through Kuchler's filing of the Motion to Confirm Arbitrator's Final Award and the Arbitrator's issuance of his June 30, 2011, Clarification Order, Respondents still had not disclosed to Kuchler that funds in the escrow account had been withdrawn. However, Kuchler apparently was becoming suspicious that Respondents may have withdrawn the funds. On July 1, 2011, Kucheler's counsel sent a letter to Respondents' counsel, which stated that with the clarification of the Final Award provided by the Clarification Order, Kuchler was demanding that Lee Realty

9

immediately pay the $262,821.84 in damages and attorneys' fees and costs that the Arbitrator had awarded. Kuchler's counsel also requested a current bank statement to verify that amounts previously deposited in the escrow account were still there. The letter stated that "[i]f either of your clients mistakenly thought that they could withdraw funds from the escrow account, they must immediately replace those funds. In that event, please provide me with a statement showing that the funds have been replaced." The letter also requested that Respondents' counsel verify that the $66,941.87 check tendered as full satisfaction of Lee's personal liability, which Kuchler had not yet cashed, "were not withdrawn from the escrowed account."

Respondents' counsel responded to the letter, but did not disclose the status of the funds that had been deposited into the escrow account.

On July 7, 2011, Kuchler filed a "Motion for Issuance of Garnishee Summons Before Judgment" directed to First Hawaiian Bank for funds owed to Respondents. In support of the motion, Kuchler asserted that the funds sought to be garnished were ordered by the Arbitrator to be deposited by Respondents into a separate bank account at First Hawaiian Bank.

On July 21, 2011, the Circuit Court held a hearing on (1) Kuchler's Motion to Confirm Arbitrator's Final Award; and (2) Kuchler's Motion for Issuance of Garnishee Summons Before Judgment. In ruling on these motions, the Circuit Court considered the Interim Order, the Partial Final Award, the Final Award, and the Clarification Order. At the hearing, Kuchler requested that as part of its order confirming the Arbitrator's award, the Circuit Court should order that the escrow account remain intact, as the Arbitrator in his Clarification Order ruled that the funds in the account could not be withdrawn without account and that none of the funds belonged to Lee. Respondents opposed this request arguing that the Partial Final Award, by using the word "may," gave the Respondents discretion on how to use the funds in the escrow account. Respondents also argued

10

that Lee only guaranteed that Lee Realty would pay Kuchler $66,000 on the Purchase Agreement, and therefore, Lee's obligation had been satisfied by the payment of the guaranteed amount, regardless of whether that money was paid by Lee or Lee Realty.

On August 15, 2011, the Circuit Court issued an order granting in part and denying in part Kuchler's Motion for Issuance of Garnishee Summons Before Judgment. The Circuit Court authorized the issuance of a garnishee summons to First Hawaiian Bank with respect to Lee Realty, but denied the issuance of the summons with respect to Lee.

On August 29, 2011, the Circuit Court filed its Confirmation Order, which states:

> 1.    Judgment on the Arbitrator's Decision and Partial Final Award dated April 25, 2011, shall be entered herein as follows: $172,845.55 against Abe Lee Realty, LLC, and of that amount, $66,941.87 against Abraham W.H. Lee solely in his capacity as guarantor.
>
> 2.    Judgment on the Final Award of Arbitrator dated June 3, 2011, shall be entered herein as follows: $89,976.29 against Abe Lee Realty, LLC.
>
> 3.    Kuchler's request that Lee be held joint and severally liable with [Lee Realty] for $66,941.87 is hereby DENIED.
>
> 4.    Kuchler's request for an award of attorney's fees and costs is hereby DENIED.
>
> 5.    <u>The funds deposited in the escrowed bank account are to be used to partially satisfy the judgment owed by Abe Lee Realty LLC only</u>.

(Emphasis added.)

On September 9, 2011, the Circuit Court filed its Final Judgment, which was stated to be "[b]ased upon the [Confirmation Order]. The Final Judgment reads:

> Judgment is hereby entered as follows:
>
> 1.    In favor of Claimant Phillip G. Kuchler[, Inc.] ("Kuchler") and against Respondent Abe Lee Realty, LLC in the amount of $262,821.84;
>
> 2.    In favor of Kuchler and against Respondent Abraham W.H. Lee, individually, solely in his capacity as

11

guarantor of $66,941.87 of the aforementioned $262,821.84
judgment against Abe Lee Realty, LLC.

The Final Judgment does not contain any language regarding the disposition of the escrow account.

On October 3, 2011, Respondents filed a notice of appeal from the Confirmation Order. On October 13, 2011, Kuchler filed a notice of cross-appeal from the Final Judgment.

B.

After the Final Judgment was filed, Kuchler engaged in attempts to collect on the Judgment, which included the issuance of additional garnishee summons and an examination of Lee, as a judgment debtor. During the examination of Lee on November 8, 2011, Lee disclosed that he withdrew $118,034.17 from the First Hawaiian Bank escrow account on April 29, 2011, four days after the arbitrator issued his Partial Final Award. Lee testified that the funds were deposited into Lee Realty's account and used to write a check to Kuchler for "[$]66,000-plus" (an apparent reference to the check tendered to Kuchler on May 17, 2011, as satisfaction of Lee's personal guaranty), as well as to make payments to Respondents' attorney, Lee's associate, and Lee. Lee also testified that around April 2011, he began the process of closing down Lee Realty and switching his real estate business to a new corporate entity called "I Properties."

On October 26, 2011, Lee filed a "Motion 1) for Protective Order, 2) to Vacate Ex Parte Motion of Examination of [Lee], 3) to Vacate Ex Parte Motions for Garnishee Summons after Judgment, 4) for Order Directing [Kuchler] to Restore [Lee's] Garnished Accounts, 5) for Sanctions and 6) for Entry of a Satisfaction of Judgment for [Lee]" (Lee's Omnibus Motion).[4] Lee's Omnibus Motion sought a protective order regarding, and an order vacating, Kuchler's ex parte motion for examination of Lee

---

[4] Although the motion is entitled "Respondents' motion . . ." and is signed by counsel as attorney for Lee Realty and Lee, the body of the motion states that the motion is made by Lee and the motion seeks relief on behalf of Lee. We therefore refer to the motion as "Lee's Omnibus Motion."

with respect to Lee's personal assets and an order vacating Kuchler's ex parte motions for garnishee summons after judgment against Lee. In support of his motion, Lee argued that the tender to Kuchler of the check for $66,941.87 on or about May 18, 2011, discharged Lee's liability under his personal guaranty. Lee therefore asserted that he was entitled to a satisfaction of judgment and orders precluding Kuchler from engaging in further collection activities against Lee.

On December 12, 2011, Kuchler filed a motion to enforce the Circuit Court's Confirmation Order. Specifically, Kuchler requested that the Circuit Court enforce the portion of the Confirmation Order that states "the funds deposited in the escrowed bank account are to be used to partially satisfy the judgment owned by [Lee Realty] only" by ordering Respondents either to (1) replace the $118,034.17 withdrawn from the escrowed account or (2) pay said funds directly to Kuchler. Kuchler also requested that the Circuit Court order that Kuchler may cash the tendered check for $66,941.87 and attribute the check to payment of interest on the Judgment and attorneys' fees and cost owned by Lee Realty.

The Circuit Court held a hearing on Lee's Omnibus Motion on November 4, 2011, which was continued to December 15, 2011, at which time the Circuit Court considered both Lee's Omnibus Motion and Kuchler's motion to enforce Confirmation Order. The Circuit Court orally ruled that it was granting Lee's Omnibus Motion in all respects, except for his request for sanctions against Kuchler. It also orally dismissed Kuchler's motion to enforce the Confirmation Order on the ground that it lacked jurisdiction to rule on the motion because Respondents had filed a notice of appeal from the Confirmation Order.

On January 6, 2012, the Circuit Court issued its written: (1) Order Regarding Lee's Omnibus Motion, which granted Lee's Omnibus Motion, except for his request for sanctions; and (2) "Order Dismissing [Kuchler's] Motion to Enforce [Confirmation Order]," which dismissed Kuchler's motion to enforce the

13

Confirmation Order for lack of jurisdiction. See footnote 2, supra.

On January 5, 2012, Kuchler filed a motion to reconsider the Circuit Court's decisions to grant in part Lee's Ominbus Motion and to dismiss Kuchler's motion to enforce the Confirmation Order. On January 25, 2012, the Circuit Court orally denied Kuchler's motion for reconsideration, and it filed its written order denying the motion for reconsideration on February 9, 2012. On February 3, 2012, Kuchler filed a notice of supplemental cross-appeal from the post-judgment orders and rulings (1) partially granting Lee's Omnibus Motion; (2) dismissing Kuchler's motion to enforce the Confirmation Order; and (3) denying Kuchler's motion for reconsideration. See footnote 2, supra.

DISCUSSION

I.

Respondents argue that the Circuit Court erred in including the following language in its Confirmation Order: "The funds deposited in the escrowed bank account are to be used to partially satisfy the judgment owed by [Lee Realty] only." Respondents argue that this language was contrary to the Arbitrator's decision because they assert that the Arbitrator did not impose any restrictions on Lee Realty's use of the funds in the escrow account. They contend that once the Arbitrator issued his Partial Final Award, Lee Realty had the discretion "to use the monies held in the escrow account as it saw fit in the ordinary course of its business."

We review a circuit court's ruling on an arbitration award de novo, keeping in mind that the circuit court's review of an arbitration award must be "extremely narrow and exceedingly deferential." Tatibouet v. Ellsworth, 99 Hawaiʻi 226, 233, 54 P.3d 397, 404 (2002) (internal quotation marks and citation omitted). In a case involving the circuit court's confirmation of an arbitration award under the former arbitration statute, HRS Chapter 658, the Hawaiʻi Supreme Court stated:

14

> Our review of arbitration awards is guided by the
> following principles.  It is well settled that because of
> the legislative policy to encourage arbitration and thereby
> discourage litigation, judicial review of an arbitration
> award is confined to the strictest possible limits.  As
> such, a court has no business weighing the merits of the
> arbitration award.  Indeed, the legislature has mandated
> that a court may vacate an arbitration award only on the
> four grounds specified in HRS § 658-9, and may modify or
> correct an award only on the three grounds specified in HRS
> § 658-10.  Therefore, HRS § 658-8 contemplates a judicial
> confirmation of the award issued by the arbitrator, unless
> the award is vacated, modified, or corrected in accord with
> HRS §§ 658-9 and 658-10.
>
> Based upon the policy limiting judicial review of
> arbitration awards, this court has held that parties who
> arbitrate a dispute assume all the hazards of the
> arbitration process including the risk that the arbitrators
> may make mistakes in the application of law and in their
> findings of fact.  Where arbitration is made in good faith,
> parties are not permitted to prove that an arbitrator[ ]
> erred as to the law or the facts of the case.

Id. (block quote format, internal quotations, and citations omitted).  The same principles of judicial review apply to arbitration awards under the current arbitration statute, HRS Chapter 658A.  Low v. Minichino, 126 Hawai'i 99, 105, 267 P.3d 683, 689 (App. 2011).[5]

A.

Because Respondents contend that the challenged language in the Circuit Court's Confirmation Order was contrary to the Arbitrator's decision, we begin with an analysis of what the Arbitrator decided with respect to the disposition of the funds in the escrow account.  As explained below, we disagree with Respondents' assertion that based on the Arbitrator's decision, Lee Realty had the discretion "to use the monies held in the escrow account as it saw fit."  We also disagree, however, with Kuchler's contention that the Arbitrator ordered that all of the funds in the escrow account were required to be used to satisfy the award against Lee Realty.

Pursuant to its Interim Order, the Arbitrator ordered Respondents to open a separate bank account and deposit into the

---

[5] HRS Chapter 658 was repealed and replaced with HRS Chapter 658A. 2001 Haw. Sess. Laws Act 265.

account all Gross Monthly Receipts received in the past and to be received in the future while the arbitration was ongoing. The Arbitrator noted that Respondents had been receiving all of the revenue from the management accounts, whereas the Purchase Agreement provided that Kuchler was entitled to a portion of those revenues. The Arbitrator therefore determined that it was appropriate to "sequester" all Gross Monthly Receipts "in a neutral account beyond the use of either party pending the final outcome of their dispute." The Arbitrator ruled that the order requiring the maintenance of the separate account containing the Gross Monthly Receipts "will remain in full force and effect until entry of the final Award in this Arbitration or until further order of the Arbitrator."

In his Partial Final Award issued on April 25, 2011, the Arbitrator found that under the Purchase Agreement, Lee Realty was liable as the Buyer to Kuchler for $172,845.55 and Lee was personally liable as a guarantor to Kuchler for $66,941.87. The Partial Final Award stated that "[t]he sums currently held in escrow may be used to partially satisfy this award."

Respondents contend that: (1) the Interim Order expired by its own terms following the issuance of the Partial Final Award; and (2) because the Partial Final Award provided that the sums in escrow "may be used," instead of "must" be used, to partially satisfy the award, Lee Realty was free in its discretion to use the money in escrow as it saw fit. We disagree.

First, the Interim Order was to remain in full force and effect "until entry of the final Award in this Arbitration or until further order of the Arbitrator." The Partial Final Award was not the "final Award" in the arbitration, because the Partial Final Award made clear that the Arbitrator intended to further award attorneys' fees and costs in favor of Kuchler as the prevailing party. In addition, the Arbitrator had not made any further order with respect to the disposition of the funds in the

escrow account. Thus, the Interim Order did not expire with the issuance of the Partial Final Award.

Second, given the Arbitrator's purpose in establishing the escrow account, it was clearly unreasonable for Respondents to believe that Lee or Lee Realty could, without notice to Kuchler or the Arbitrator, unilaterally withdraw the funds and freely use the funds as Lee Realty saw fit. The stated purpose of establishing the escrow account was to sequester the revenue earned on the management accounts "in a neutral account beyond the use of either party" because a portion of those revenues under the terms of the Purchase Agreement was owed to Kuchler. Moreover, in the Partial Final Award, the Arbitrator ruled that the Purchase Agreement was valid and enforceable and that Kuchler was owed $172,845.55 under the Purchase Agreement. Given this context, we conclude that the statement in the Partial Final Award that "[t]he sums currently held in escrow may be used to partially satisfy this award" cannot reasonable be construed to mean that Lee or Lee Realty could unilaterally withdraw the funds from the escrow account and use it for any purpose Lee Realty saw fit. The meaning ascribed to this statement by Respondents is without merit.

Our conclusion is confirmed by the Arbitrator's Clarification Order, in which the Arbitrator stated that "[t]he language and purpose of the [Interim] Order establishing the escrow account clearly did not permit the funds to be released from escrow without account, as they were placed in escrow specifically to preserve the funds pending resolution of the dispute over the rights to these fees." The Clarification Order concluded that Lee had no legal right to any of the funds in the escrow account, and that both Kuchler and Lee Realty had legal interests in the funds deposited into the account. The Clarification Order then stated that "[i]n accordance with these facts, the Partial Final Award allowed for the escrowed [account] to be applied to the award."

B.

Although we conclude that Respondents' interpretation of the Arbitrator's decision regarding the use of the funds in the escrow account is unreasonable, we also conclude that the Arbitrator did not go as far as Kuchler claims.  Kuchler argues that the Arbitrator's decision should be construed to mean that all of the funds in the escrow account must be used to satisfy the award against Lee Realty.  We disagree with Kuchler.  Our reading of the Arbitrator's Interim Order, Partial Final Award, and Clarification Order convinces us that the Arbitrator chose not to make a final determination on how the funds in the escrow account were required to be used.

The Arbitrator only determined that (1) both Kuchler and Lee Realty had legal interests in the funds in the account; (2) that Lee did not have any interest in these funds; and (3) the funds could not be "released from escrow without account." Despite being given the opportunity by Kuchler's clarification motion, the Arbitrator did not specifically rule on whether all the funds placed in the escrow account were required to be used to satisfy the award against Lee Realty.  Instead, the Arbitrator simply stated in his Clarification Order that "the Partial Final Award allowed for the escrowed [account] to be applied to the award."  (Emphasis added.)  Obviously, the Arbitrator was not aware that Respondents had already withdrawn the funds from the escrow account when he issued his Clarification Order.  While it is clear that Respondents' action in unilaterally withdrawing the funds from the escrow account violated the Arbitrator's orders, we cannot say that the Arbitrator determined that all the funds in the escrow account were required to be used to satisfy the award against Lee Realty.

C.

Having determined what the Arbitrator actually ordered with respect to the funds in escrow, we turn to whether the Circuit Court's Confirmation Order was consistent with the Arbitrator's decision.  As noted, the challenged portion of the

18

Confirmation Order states: "The funds deposited into the escrowed bank account are to be used to partially satisfy the judgment owed by [Lee Realty] only." Both Kuchler and Respondents construe this provision of the Confirmation Order as meaning that the Circuit Court ordered that the funds placed in escrow were required to be used only to satisfy the judgment owed by Lee Realty. Based on our review of the record, we agree that this is the most reasonable interpretation of the Circuit Court's Confirmation Order.

Construed in this fashion, we conclude that the challenged provision of the Confirmation Order went beyond the decision actually made by the Arbitrator. As noted, the Arbitrator ruled that Kuchler, along with Lee Realty, had a legal interest in the funds in the escrow account and that the funds could not be withdrawn by Lee Realty "without account." Accordingly, it was improper for Respondents to unilaterally withdraw the funds without recognizing Kuchler's interest. The Arbitrator also ruled that Lee had no legal right to access the funds in the escrow account in any personal capacity. However, aside from recognizing Kuchler's partial interest in the funds, prohibiting Respondents from unilaterally withdrawing the funds, and permitting the funds to be used to partially satisfy the award against Lee Realty, the Arbitrator did not make a decision on how the funds were required to be used.

The role of the Circuit Court in confirming an arbitration award is to confirm the award made by the Arbitrator. Because the provision of the Confirmation Order challenged by Respondents went beyond the Arbitrator's award, we vacate the challenged provision and remand the case with instructions that the Circuit Court enter a Confirmation Order that conforms to the Arbitrator's award.

II.

In its cross-appeal, Kuchler argues that the Circuit Court erred in failing to conform its Final Judgment to the Confirmation Order by not including the provision of the

19

Confirmation Order challenged by Respondents. This argument has been rendered moot by our decision to vacate the challenged provision.

III.

Kuchler also challenges the Circuit Court's post-judgment decisions: (1) granting Lee a satisfaction of judgment on his liability as a guarantor, based on the tender of the check for $66,941.87, and precluding further attempts to collect the judgment against Lee; (2) dismissing Kuchler's motion to enforce the Confirmation Order for lack of jurisdiction because the Confirmation Order had been appealed; and (3) denying Kuchler's motion for reconsideration of these rulings.

A.

Lee's Omnibus Motion requesting entry of a satisfaction of judgment and an order precluding further collection attempts against him was based on his counsel's tender of the $66,941.87 check to Kuchler. In support of his motion, Lee argued that the tender of this check discharged Lee's liability under his personal guaranty, regardless of whether the funds came from the escrow account or whether the payment was attributed to Lee or Lee Realty. The Circuit Court apparently agreed with Lee's argument in granting Lee a satisfaction of judgment on his liability as guarantor and precluding further collection attempts against Lee. We conclude that the Circuit Court erred in this decision.

At the outset, we note that in his debtor's examination, Lee admitted that he unilaterally withdrew the funds from the escrow account and that the $66,941.87 check tendered to Kuchler came from these funds. As the Arbitrator ruled, Lee has no legal right to the escrowed funds, and Lee's tender of the funds to discharge his personal liability was improper. Lee attempts to get around this obstacle by arguing that the source of the funds and whether the $66,941.87 check is attributed to Lee or Lee Realty is irrelevant to the question of whether Lee's personal liability as guarantor was satisfied.

20

Lee's argument is based on two underlying propositions: (1) that pursuant to his guaranty, any payment by Lee Realty under the Purchase Agreement must first be used to extinguish Lee's liability; and (2) Kuchler was required to attribute any payment it received on the arbitration award, or the judicial order or judgment confirming the award, to damages for breach of the Purchase Agreement, and not to attorneys' fees and costs.

With respect to Lee's first proposition, he contends that because he only guaranteed the purchase price under the Purchase Agreement "for the first year," any payments made by Lee Realty for the purchase price served to extinguish his guarantee. Lee's contention, however, is inconsistent with the terms of the Purchase Agreement.

"The nature and extent of a guarantor's liability depends on the terms of the guarantee contract." Tenet HealthSystem TGH, Inc. v. Silver, 52 P.3d 786, 788 (Ariz. Ct. App. 2002). The guaranty provision of the Purchase Agreement provided as follows:

> 1.8 Security for Payment of Purchase Price. The payment of the purchase price in accordance with this Agreement shall be personally guaranteed for the first year by the Buyer's principal, Abe Lee (whose consent to this Agreement acknowledges his guaranty), pursuant to an unconditional guaranty under which Seller may pursue collection of the unpaid amounts under this Agreement and under the following described promissory note against either or both Buyer and/or the Guarantor in such order or combination as Seller chooses. The Guaranty Document shall be a standard form acceptable to Seller and shall be executed and delivered at the Closing. At the determination of the final purchase price, Buyer shall execute a promissory note payable to the order of Seller in the amount of the then outstanding balance of the purchase price in accordance with the amortization schedule as provided in Section 1.7.[6]

(Emphasis added.)  Lee's claim that any payments made by Lee Realty for the purchase price served to extinguish Lee's guarantee is belied by the terms of guaranty provision, which authorize Kuchler to "pursue collection of the unpaid amounts

_____

[6] The record indicates that no "Guaranty Document" or promissory note was actually prepared or signed.

under [the Purchase Agreement] . . . against either or both [Lee Realty] and/or [Lee] in such order or combination as [Kuchler] chooses." (Emphasis added.) We conclude that the guarantee provision does not support the first proposition underlying Lee's argument.

With respect to Lee's second proposition, he cites no authority to support his claim that Kuchler was required to attribute the $66,941.87 check to the damages portion of the arbitration award. Under the arbitration award, Lee Realty owed Kuchler $89,976.29 in attorneys' fees and costs, as well as $172,845.55 in damages, of which Lee was a guarantor of $66,941.87. Lee had no personal right to access the escrowed funds used for the $66,941.87 check tendered to Kuchler. Lee provides no valid reason why Kuchler could not attribute the check to payment of the attorneys' fees and costs portion of the Arbitrator's award. In that event, none of the check proceeds would have satisfied the amounts owed by Lee Realty for damages or by Lee on his guaranty.

We conclude that Lee's argument that the tender of the $66,941.87 check extinguished his liability as guarantor is without merit. Lee had no personal right to access the escrowed funds used for the check and had no right to require that Kuchler attribute the check proceeds to Lee's guaranty. Accordingly, we conclude that the Circuit Court erred in granting Lee a satisfaction of judgment and in precluding Kuchler from engaging in further collection actions against Lee.

B.

We conclude that the Circuit Court erred in dismissing Kuchler's motion to enforce the Confirmation Order for lack of jurisdiction. Respondents did not post a supersedeas bond and the Confirmation Order was not stayed pending Respondents' appeal. See Hawai'i Rules of Appellate Procedure Rule 8 (2010). Accordingly, Respondents' appeal from the Confirmation Order did not deprive the Circuit Court of jurisdiction to enforce the Confirmation Order. See MDG Supply, Inc. v. Diversified

Investments, Inc., 51 Haw. 375, 381-82, 463 P.2d 525, 529 (1969) (concluding that the trial court retains jurisdiction over the enforcement of a judgment after the filing of a notice of appeal from the judgment, where no supersedeas bond is filed).

We note, however, that we have vacated the provision of the Confirmation Order that was the focus of Kuchler's enforcement motion. Thus, Kuchler's motion will be affected by our decision as well as any modifications made by the Circuit Court to the Confirmation Order on remand.

C.

Based on the foregoing analysis, we need not independently address Kuchler's arguments regarding the Circuit Court's denial of his motion for reconsideration.

CONCLUSION

We vacate: (1) the portion of the Confirmation Order challenged by Respondents on appeal; (2) the portions of the Order Regarding Lee's Omnibus Motion and the "Order Dismissing [Kuchler's] Motion to Enforce Confirmation Order" that were challenged by Kuchler on appeal; and (3) the order denying Kuchler's motion for reconsideration. We remand this case for further proceedings consistent with this Memorandum Opinion.

DATED: Honolulu, Hawaiʻi, May 31, 2013.

On the briefs:

Richard E. Wilson
for Respondents-Appellants/
Cross-Appellees

Dennis W. King
William J. Deeley
John Winnicki
(Deeley King Pang & Van Etten
A Limited Liability Law
Partnership)
for Claimant-Appellee/
Cross-Appellant

*Craig H. Nakamura*
Chief Judge

*Daniel R. Foley*
Associate Judge

*Lawrence M Reifurth*
Associate Judge

23